**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CENTRAL TRANSPORT** | : | **CIVIL ACTION NO. 1:04-CV-2163** |
| **INTERNATIONAL, INC.,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TBB GLOBAL LOGISTICS, INC.,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is a motion filed by defendant TBB Global

Logistics, Inc. ("TBB") for partial summary judgment on the claims of plaintiff

Central Transport International, Inc. ("CTI") for breach of contract, unjust

enrichment, and quantum meruit.  For the reasons that follow, the motion will be

granted in part and denied in part.

**I.    <u>Statement of Facts</u>**[1]

TBB is a licensed motor-carrier property broker, with its principal place of

business in New Freedom, Pennsylvania.  (Doc. 3 ¶ 3; Doc. 5 ¶ 3; Doc. 24 at 2; Doc.

28 at 2.)  As a transportation logistics company, TBB provides various services to

small businesses, including freight routing, pre-auditing of freight bills, tracing and

expediting shipments, rate negotiations with transportation companies, and filing

loss and damage claims.  (Doc. 25 ¶ 4.)  To this end, TBB enters into contractual

---

[1] In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to plaintiff, as
the non-moving party.  <u>See</u> <u>infra</u> Part II.

relationships with motor carriers to provide transportation services to TBB's

customers.  (Doc. 24 at 2; Doc. 25 ¶¶ 2-3.)

CTI is a motor carrier with its principal place of business in Warren,

Michigan.[2]  (Doc. 3 ¶ 2; Doc. 5 ¶ 2; Doc. 24 at 2; Doc. 28 at 2.)  Between 1991 and 2003

TBB and CTI entered into a series of substantially similar contracts for CTI to

transport freight for TBB's customers.  (Doc. 24 at 2; Doc. 28 at 2; Doc. 25 ¶¶ 11, 46.)

The most recent of these contracts was executed on June 15, 2003.  (Doc. 23 ¶

3; Doc. 29 ¶ 3; Doc. 25, Ex. 1.)  By the terms of the agreement, CTI provided

transportation "and other services" to TBB's customers, and submitted freight bills

directly to TBB for those services.  (Doc. 25, Ex. 1 ¶ D.)  TBB was required to remit

payment to CTI within forty-five days of receipt of a freight bill.[3]  (Doc. 25, Ex. 1 ¶

5A.)  The tariff rates and rules for CTI's services were set forth in an appendix to

the contract, which could only be modified in writing and with the approval of both

parties.  (Doc. 25, Ex. 1 ¶ 4.)  The rates were established as a specific percentage of

National Motor Freight Classification base rates ("base rates"), compiled for United

States domestic traffic.  (Doc. 23 ¶¶ 19-20; Doc. 29 ¶¶ 19-20; Doc. 25 ¶ 39.)  The

---

[2] Jurisdiction over the claim is based on diversity of citizenship, see 28 U.S.C.
§ 1332, and the parties do not dispute the applicability of Pennsylvania law (see Doc.
5, Ex. 1 ¶¶ 12, 21 (forum selection clauses)).  See Erie R.R. Co. v. Tompkins, 304 U.S.
64, 79-80 (1938); see also Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir.
1992) (noting that federal courts sitting in diversity must apply the substantive law
of the forum state).

[3] Alternatively, TBB could, within ninety days, advise CTI that TBB was
unable to effect collection on a given freight bill.  (See Doc. 5, Ex. 1 ¶ 5B.)

contract deemed as "null and void" all penalty provisions in the tariff rules for late payment of charges,[4] and provided that any suit to recover charges must be commenced within 18 months of CTI's delivery of the freight at issue.  (Doc. 5, Ex. 1 ¶ 5A.; Doc. 23 ¶ 22; Doc. 25 ¶ 12; Doc. 29 ¶ 22.)  The term of contract was one year, and could not be cancelled unilaterally unless one party could "prove a material and continuing breach" by the other.  (Doc. 25, Ex. 1 ¶ 2.)  By express terms, the agreement terminated as of June 15, 2004; however, TBB and CTI extended the termination date to July 12, 2004.  (Doc. 23 ¶ 7; Doc. 29 ¶ 7; Doc. 25, Ex. 1 ¶ 2.)

CTI commenced the instant action in September 2004.  (Doc. 1.)  The amended complaint raises claims for breach of contract and unjust enrichment.  (See Doc. 3.)  The pleading alleges that TBB refused to pay CTI for freight bills submitted in accordance with the terms of the contract.  (Doc. 3 ¶¶ 10-11.)  It avers that, "after applying credits due to [TBB] for freight claims, commissions and overcharge reimbursements, the remaining outstanding balance of freight and related charges due" to CTI is $453,788.21, plus interest and costs.  (Doc. 3 ¶ 12.)  TBB subsequently filed a counterclaim against CTI for breach of contract and interference with business relations.  (Doc. 5 at 11-14.)

During the course of discovery in this case, CTI proffered a twenty-two page spreadsheet of its damages.  (See Doc. 28, Ex. D, Attach. A.)  The spreadsheet is a statement of account for approximately 780 freight bills purportedly submitted by

_____

[4] See infra note 6.

3

CTI to TBB for the period from June 2000 through March 2005.  (See Doc. 28, Ex. D,
Attach. A.)  The spreadsheet purports to reflect the date of each failure by TBB to
remit timely payment, the "face amount" of each freight bill, a "penalty"[5] assessed
by CTI "for TBB's repeated failure to pay their bills on time," and the removal of a
"discount" and application of the base rate "as a result of [TBB's] repeated failure
to pay their freight bills in full."  (Doc. 28, Ex. A ¶¶ 6, 8-10.)  The total amount of
unpaid freight bills is $55,018.55.  (Doc. 28, Ex. A, Attach. A; Doc. 28, Ex. A ¶ 13.)
Penalties for unpaid and untimely paid freight bills amount to $50,246.24, and the
increase from the removal of the percentage rates and the application of the base
rates total $259,450.77.  (Doc. 28, Ex. A, Attach. A; Doc. 28, Ex. A ¶ 13.)  The sum of
the allegedly unpaid freight bills, penalties, and base rates is $364,715.56.  (Doc. 28,
Ex. A, Attach. A; Doc. 28, Ex. A ¶ 13.)

The instant motion for partial summary judgment argues that CTI's
requested damages are barred by the provisions of the contract.  Specifically, TBB
asserts that the claims for penalties and liquidated damages, and claims related to
shipments that occurred more than eighteen months before CTI commenced this
action, are barred by the terms of the contract.  Further, the motion contends that
CTI's claim for unjust enrichment cannot stand as a valid contract exists.  (Doc. 22

---

[5] Although CTI's counter-statement of material facts denies that the
spreadsheet reflects penalties (see Doc. 29 ¶¶ 12, 14), the affidavit accompanying the
spreadsheet clearly states that these sums are "penalt[ies] for TBB's failure to pay
[its] bills in full," and indeed, the spreadsheet itself labels them as such (see Doc. 28,
Ex. D ¶ 10; see also Doc. 28, Ex. D ¶ 13).

at 2.)  The motion has been fully briefed and is now ripe for disposition.

## II.    <u>Standard of Review</u>

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury."  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004).  Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim.  FED. R. CIV. P. 56(e); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Corneal v. Jackson Township</u>, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), <u>aff'd</u>, 94 Fed. Appx. 76 (3d Cir. 2004).  "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)). Only if this burden is met may the cause of action proceed.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see</u> FED. R. CIV. P. 56(c), (e).

## III.    <u>Discussion</u>

The issue presently before the court is the appropriate calculation of damages for TBB's alleged breach of contract.  In a breach of contract cause of action, damages are awarded to compensate the injured party for losses incurred because of the breach, <u>see</u> <u>Empire Prop., Inc. v. Equireal, Inc.</u>, 674 A.2d 297, 304 (Pa. 1996), and are to put a plaintiff in the position he or she would have been but

for the breach. <u>Pittsburgh Constr. Co. v. Griffith</u>, 834 A.2d 572, 580 (Pa. Super. Ct. 2003). "Recovery will not be precluded simply because there is some uncertainty as to the precise amount of damages incurred," however, a plaintiff must still put forth "evidence which establishes, with a fair degree of probability, a basis for their assessment." <u>Wujik v. Yorktowne Dental Assoc., Inc.</u>, 701 A.2d 581, 584 (Pa. Super. Ct. 1997) (citation omitted). Further, it is well-established, in Pennsylvania and most other jurisdictions, that a breach of contact, even when "solely motivated by malicious intent," cannot warrant the imposition of punitive damages against the breaching party. <u>Kinnel v. Mid-Atlantic Mausoleums, Inc.</u>, 850 F.2d 958, 968 (3d Cir. 1988); <u>Johnson v. Hyundai Motor Am.</u>, 698 A.2d 631, 639 (Pa. Super. Ct. 1997).

The instant motion for summary judgment avers that the terms of the contract prohibit the application of penalties and base rates, and that a number of the claims set forth by CTI are for shipments that occurred beyond the contractual period within which CTI could institute a civil action to recover charges, or after the period in which the contract was in effect. (Doc. 23 ¶¶ 12-26.) CTI concedes these points (<u>see</u> Doc. 29 ¶¶ 12-26), but argues that the terms of the contract do not apply because TBB materially breached the agreement by refusing to pay the freight bills within the mandatory forty-five day period. (Doc. 28 at 6.) The court is unpersuaded by this argument. CTI fails to offer any legal support for the proposition that it is entitled to extra-contractual remedies. As set forth above, the purpose of damages in a breach of contract action is to put the plaintiff in the position he or she would have been but for the breach. <u>Griffith</u>, 834 A.2d at 580.

6

The contract at issue does not call for the application of penalties or base rates when payments are not timely made.  To the contrary, it specifically prohibits them.[6]  (Doc. 23 ¶ 16; Doc. 29 ¶ 16; Doc. 25, Ex. 1 ¶ 5.)

Moreover, CTI did not renounce the agreement.  It allowed the contract to run its course and, indeed, extended it for an additional month.  See Fichera v. Gording, 227 A.2d 642, 643-44 (Pa. 1967) ("When a party discovers facts which warrant rescission of his contract, it is his duty to act promptly, and, in case he elects to rescind, to notify the other party without delay, or within a reasonable time. . . .  Failure to rescind within a reasonable time is evidence . . . of an election to affirm the contract.").  CTI never imposed late penalties on past due invoices, or warned TBB of late penalties for late payments.  (Doc. 23 ¶¶ 17-18; Doc. 29 ¶¶ 17-18; Doc. 25 ¶¶ 11, 34; see also Doc. 28, Ex. A at 21).  Indeed, the first freight bill to reflect a penalty assessment was submitted to TBB ten days before the filing of the instant lawsuit, and two months after the contract expired.  (See Doc. 25 ¶ 35.)  See Gray v. Md. Credit Fin. Corp., 25 A.2d 104, 106-07 (Pa. Super. Ct. 1942) ("The principle is general that wherever a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain

---

[6] CTI derived its damages by applying CTII 100 Rules Tariff, Items 515 and 720 (see Doc. 32, Ex. A at 2-3; Doc. 23 ¶ 12; Doc. 29 ¶ 12), and removing the contract's percentage discount rate (see Doc. 28 at 3; Doc. 29 ¶ 12).  However, the contract specifically prohibits application of these items.  (See Doc. 23 ¶ 15; Doc. 29 ¶ 15; Doc. 25, Ex. 1 ¶¶ 4, 5A; Doc. 25, Ex. 1, Appen. B, Pt. I.)

the excuse is not only asserted but assented to.") (citation omitted).

The contractual arrangement between TBB and CTI required that any actions for payment be brought within eighteen months of accrual.  (See Doc. 23 ¶ 22; Doc. 29 ¶ 22; Doc. 25 ¶¶ 11, 46; Doc. 25, Ex. 1 ¶ 12.)  The instant suit was commenced on September 28, 2004.  (See Doc. 1.)  Accordingly, any claims that accrued before March 28, 2003—eighteen months before the commencement of the instant action—cannot proceed.  (See Doc. 23 ¶¶ 23, 24; Doc. 29 ¶¶ 23, 24.)

A cause of action for unjust enrichment cannot lie where a valid contract exists.  See Lackner v. Glosser, 892 A.2d 21, 34 (Pa. Super. Ct. 2006) ("By its nature, the doctrine of quasi-contract, or unjust enrichment, is inapplicable where a written or express contract exists."); see also id. ("Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay . . . . restitution to the plaintiff in quantum meruit); Mitchell v. Moore, 729 A.2d 1200, 1202 n.2 (Pa. Super. Ct. 1999) ("A cause of action for . . . quantum meruit, a form of restitution, is made out where one person has been unjustly enriched at the expense of another.").  CTI does not dispute that a valid contract existed for the freight bills at issue.  Accordingly, CTI cannot proceed on the theories of unjust enrichment or quantum meruit for claims that accrued during the contract period.

Finally, CTI's claims encompass bills of freight for shipments occurring after the date of cessation of the agreement.  (See Doc. 25 ¶ 47; see also Doc. 23 ¶ 7; Doc. 29 ¶ 7.)  Because a contract does not exist for these disputed invoices, CTI's claims for unjust enrichment and quantum meruit may proceed with respect to those

8

claims accruing after the contract's July 12, 2004 termination date.  See Lackner,

892 A.2d at 34; (See Doc. 23 ¶¶ 25, 26; Doc. 29 ¶¶ 25, 26.)

**IV.    Conclusion**

Because the contract at issue does not allow for the application of penalties

or removal of discounts, TBB's motion for partial summary judgment will be

granted with respect to those damages.  Similarly, as the contract expressly

prohibits litigation on claims over eighteen months old, summary judgment will be

granted on claims that accrued before March 28, 2003.  Finally, claims of unjust

enrichment and quantum meruit cannot stand where a valid contract exists.

Hence, summary judgment will be granted on those claims accruing before the

contract's termination date of July 12, 2004.

An appropriate order will issue.


 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      May 12, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CENTRAL TRANSPORT** | : | **CIVIL ACTION NO. 1:04-CV-2163** |
| **INTERNATIONAL, INC.,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TBB GLOBAL LOGISTICS, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 12th day of May, 2006, upon consideration of defendant's

motion (Doc. 22) for partial summary judgment, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.  The motion (Doc. 22) for partial summary judgment is GRANTED with
    respect to the following claims:

    a.  Claims accruing before March 28, 2003.

    b.  Claims for penalties and damages derived by removing the
        discount rates and applying the base rates.

    c.  Claims of unjust enrichment and quantum meruit accruing
        prior to July 12, 2004.

2.  The motion (Doc. 22) for partial summary judgment is otherwise
    DENIED.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge